**EUCLID NATIONAL BANK, Plaintiff,**

v.

**The FEDERAL HOME LOAN BANK BOARD et al., Defendants.**

**Civ. A. No. C 66–505.**

United States District Court
N. D. Ohio, E. D.

Dec. 12, 1966.

**126**

Maxwell J. Gruber, Zellmer & Gruber, Cleveland, Ohio, for plaintiff.

Merle M. McCurdy, U. S. Atty., Robert S. Turoff, Asst. U. S. Atty., for defendants.

MEMORANDUM

WILLIAM K. THOMAS, District Judge.

Defendant Federal Home Loan Bank Board (hereafter called Board) and Fed-

eral Savings and Loan Corporation (hereafter called Insurance Corporation) move to dismiss plaintiff Euclid National Bank's (hereafter called Euclid National) complaint for declaratory judgment. Admitted for the purpose of the motion and pertinent to its decision are these facts pled in the complaint:

Prior to its conversion on February 1, 1966, Euclid National was Euclid Savings Association (hereafter called Euclid Savings), chartered under the laws of Ohio. Pursuant to Section 403, of the National Housing Act, 12 U.S.C.A. § 1726 (1965), the accounts of Euclid Savings were insured by the defendant Insurance Corporation. Billed by the defendant Insurance Corporation, Euclid Savings on November 21, 1965 paid its annual premium of insurance on Euclid Savings' accounts.

On February 1, 1966, Euclid Savings converted to and became Euclid National under the National Banking Act, 12 U.S.C.A. § 35 (1965). Federal Deposit Insurance Corporation, of which Euclid National became a member on February 1, 1966, now insures Euclid National's savings accounts and credit obligations.

Upon its conversion on February 1, 1966 to a national bank, Euclid Savings ceased to be an insured institution under the National Housing Act. On February 4, 1966, plaintiff Euclid National demanded that defendant Board and defendant Insurance Corporation remit the allegedly unearned portion of the annual premium of $26,441.26 paid to the Insurance Corporation on November 21, 1965 to insure the savings accounts of Euclid Savings. Defendants Board and Insurance Corporation refused to remit.

The plaintiff prays for a judicial determination of its rights and defendants' obligations "under the Federal Housing Act and the National Banking Act and the Rules and Regulations of the Federal Savings and Loan Corporation." Neither in the complaint nor in its briefs does the plaintiff identify any federal statute or federal rule or regulation

which either requires or permits the Board or the Insurance Corporation to remit any part of the annual insurance premium.

The National Housing Act in Section 404, 12 U.S.C.A. § 1727 (1965), provides for the payment and calculation of premiums on insurance in Section 404, 12 U.S.C.A. § 1727 (1965) and for the termination of insurance in Section 407, 12 U.S.C.A. § 1730 (1965). But nowhere in the Act is there any provision for a refund of premium. Actually the Act makes no provision for termination of insurance premiums upon conversion or even dissolution of a state savings and loan association. However, regulations of the defendant Board contained in 12 C.F.R. pt. 565 (1963), make provision for termination of insurance. Section 565.5 provides for cessation of existence by merger or consolidation. Section 565.6 covers any other case of cessation of existence of an insured institution. Under both Section 565.5 and Section 565.6, the insured institution's

liability for insurance premiums, except premiums still unpaid (including current annual premium) shall cease
* * *

as of the date its existence ceases.

Euclid Savings' cessation is covered by either one or the other of these regulations. Its liability for future insurance premiums is thereby limited to unpaid premiums "including current annual premiums." Benefitting by these regulations Euclid Savings escapes the burden of Section 407 of the National Housing Act, 12 U.S.C.A. § 1730 (1965) that upon the approved termination of a non-federal savings and loan association "as an insured institution,"

such insured institution shall be obligated to pay, within thirty days after any such notice or order of termination, as a final insurance premium, a sum equivalent to twice the last annual insurance premium paid by it.

Euclid Savings was obligated to pay the entire current annual premium, as specified in regulatory Sections 565.5 and

565.6. Euclid National as successor to Euclid Savings, bound by this same requirement, is prohibited from seeking any refund of the "current annual premium" paid November 21, 1965.

Nevertheless, Euclid National argues that "it is clear from an examination of * * * Sections 563.16 and 565.5, that Congress realized that under certain situations an equitable adjustment of unearned premiums should take place and by reason thereof, ordered such to occur."

Regulations 563.16 and 565.5 are adopted by the Board rather than by Congress. Section 565.5 states that it is "subject to the provisions of Section 563.16" which provides, in part,

That if the institution which is absorbed by such insured institution by such merger, consolidation, or purchase of bulk assets is an insured institution, the insured institution which has so absorbed such other insured institution shall receive a credit upon its future premiums of the unearned portion of any premium of such absorbed institution to the extent that the same has been paid, and the unearned portion of any premium of such absorbed institution shall, to the extent that the same has not been paid, be canceled.

Section 563.16 provides only for crediting, not for refund, of "unearned portion of any premium." Section 563.16 pertains to the consolidation of two institutions, both insured by the Federal Savings and Loan Corporation. Under such circumstances the unearned portion of insurance premium of the absorbed institution is credited in favor of the absorbing institution. Section 563.16 does not deal with an institution insured by the Federal Savings and Loan Corporation that is converted or absorbed into a national bank, whose deposits then become insured by the Federal Deposit Insurance Corporation. Neither by statute nor by regulation is there provision or authority for crediting of insurance premiums by and between these

two wholly separate governmental insuring agencies.

As with all insured institutions, in paying the annual insurance premium Euclid Savings knew that defendant Insurance Corporation did not expressly promise return of any portion of the premium if for any reason Euclid Savings' status as an insured institution ceased during the year. A review of the pertinent federal statutes and applicable agency regulations has revealed no provision from which a promise to refund a short-rate premium can be implied in law. In the absence of any express agreement, or agreement that may be implied in law, the ordinary rule applies that "an insured may not have any part of his premium returned once the risk attaches, even if it eventually turns out that the premium was in part unearned." Fleetwood Acres v. Federal Housing Adm., 171 F.2d 440, at 442 (2d Cir. 1948).

For the foregoing reasons the motion of defendants to dismiss plaintiff's complaint is granted.