United Employees Credit Union *v.* Massachusetts Credit Union Share Ins. Corp.

UNITED EMPLOYEES CREDIT UNION *vs.* MASSACHUSETTS
CREDIT UNION SHARE INSURANCE CORPORATION.

Suffolk. February 5, 1980. — April 15, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Credit Union.   Massachusetts Credit Union Share Insurance Corporation.*

A credit union was not entitled to return of the total assessments paid to
    Massachusetts Credit Union Share Insurance Corporation pursuant to
    § 7 of St. 1961, c. 294, upon its voluntary withdrawal from the cor-
    poration.  [401-402]

CIVIL ACTION commenced in the Superior Court on No-
vember 22, 1976.

The case was heard by *Dimond,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Bertram E. Snyder* for the plaintiff.

*Ronald F. Kehoe* for the defendant.

BRAUCHER, J.   United Employees Credit Union (United)
seeks a declaration that it is entitled to return of the assess-
ments paid to Massachusetts Credit Union Share Insurance
Corporation (MCUSIC) pursuant to § 7 of the MCUSIC
statute, St. 1961, c. 294, as amended.[1]  The case was heard
on a stipulation of facts and accompanying exhibits, and a
judgment was entered declaring that United is not entitled
to the return of any of the assessments claimed.   United ap-
pealed, we allowed its application for direct appellate re-
view, and we now affirm.

We summarize the stipulated facts.   United is a credit
union organized under G. L. c. 171 and a member of

---

[1] Statute 1961, c. 294, § 1, enacted a statute consisting of twelve sec-
tions, which have not been incorporated in the General Laws but may be
found as c. 171 App. in both Mass. G. L. Ann. and Mass. Ann. Laws.

MCUSIC, a corporation created by St. 1961, c. 294, to insure shares and deposits of member credit unions. On becoming a member in 1964, United paid MCUSIC $56,506.37 pursuant to § 7 of the MCUSIC statute. Additional semi-annual § 7 assessments were paid to maintain United's contribution at one per cent of its total share and deposit balances, bringing the total § 7 assessment to $60,901.80. MCUSIC paid dividends on § 7 assessments in each year since 1971. United also paid assessments in a total amount of $53,132.35 pursuant to § 8 of the MCUSIC statute, providing for semi-annual assessments of one twenty-fourth of one per cent of the member's share and deposit liabilities. No dividends were paid on § 8 assessments, and United does not seek the return of the § 8 assessments. In June, 1976, United became a member of Federal Share Insurance, a Federal corporation providing insurance similar to that provided MCUSIC, voluntarily withdrew from MCUSIC, and demanded return of its § 7 assessments. MCUSIC refused the demand.

The parties agree that the MCUSIC statute does not explicitly authorize return of § 7 assessments to a member who voluntarily withdraws. The assessments paid pursuant to § 7 and § 8 make up the "share insurance fund." § 8. MCUSIC is authorized to use the fund to provide financial assistance to troubled members, including their operation or liquidation. Section 7 assessments may be "charged by the member to its guaranty fund, reserve account, undivided earnings, or established as an asset"; § 8 assessments may only be "charged to the guaranty fund, reserve account, undivided earnings or operating expense." "Uniform refunds" of § 7 assessments over one per cent are authorized, and in the event of dissolution of MCUSIC § 7 assessments are to be distributed to the "then members" pro rata. § 10.

The MCUSIC statute bears some resemblance to the earlier statutes creating the mutual savings bank Deposit Insurance Fund, St. 1934, c. 43, and the cooperative bank Share

Insurance Fund, St. 1934, c. 73,[2] and a comparison of the three statutes suggests that the MCUSIC statute is incomplete. The savings bank statute provides that a member bank that voluntarily withdraws from the State program to join the Federal counterpart receives a cash refund of its original assessment of one-quarter of one per cent of deposits. § 15 (a), inserted by St. 1956, c. 324, § 10. If the withdrawn member rejoins that State program, it is credited with the retained portion of its original assessment. § 16, inserted by St. 1956, c. 324, § 10. Upon dissolution and liquidation of the Fund, a withdrawn member is entitled to its pro rata share of assessments not theretofore repaid. § 10, as amended by St. 1956, c. 324, § 9. Excess funds may be used to pay withdrawn members on account of the assessments not theretofore repaid. § 15 (c), inserted by St. 1956, c. 324, § 10. In case of the liquidation of a member, the directors of the Fund may return "the unexpended portion, as determined by said directors, of all assessments" after deducting a charge for insurance. In cases of merger or consolidation, the continuing bank succeeds to the rights of the discontinuing bank in the assessments theretofore paid. § 3, as amended by St. 1956, c. 324, § 6.

The cooperative bank statute makes provisions similar to those in the savings bank statute. St. 1934, c. 73, as amended by St. 1956, c. 323. But the cash refund to a bank which withdraws to join the Federal counterpart is one-half of its original one per cent assessment instead of its original assessment of one-fourth of one per cent. § 14 (a).

The bill which became the MCUSIC statute provided for return of assessments on voluntary liquidation of a member credit union or on its withdrawal. 1961 House Doc. No. 2652, § 8. On liquidation, the bill provided, MCUSIC "may" return to the member its proportionate share of all assessments under § 7 — the assessments of one per cent of its share balances. On withdrawal MCUSIC "may repay"

[2] Statute 1934, cc. 43 & 73, have not been incorporated in the General Laws but may be found as c. 168 App. and c. 170 App., respectively, in both Mass. G. L. Ann. and Mass. Ann. Laws.

one-half of the member's proportionate share of § 7 assessments; "all other funds and assessments shall be retained by the cooperation as payment for the insurance coverage." The latter provision would have given United only half of what it now claims. Both provisions were deleted in the course of enactment.

In the absence of any statutory provision for the situation that has arisen, the judge treated the assessments in question like insurance premiums, not subject to refund. Cf. *North N.Y. Sav. Bank* v. *Federal Sav. & Loan Ins. Corp.*, 515 F.2d 1355, 1358-1360 (D.C. Cir. 1975); *Euclid Nat'l Bank* v. *Federal Home Loan Bank Bd.*, 286 F. Supp. 125 (N.D. Ohio, 1966), aff'd, 396 F.2d 950 (6th Cir.), cert. denied, 393 U.S. 846 (1968). United argues with some force that § 7 assessments are designed to produce a reserve to be used only if § 8 assessments are insufficient, and hence are unlike premiums. United urges upon us instead the analogy of deposits made with mutual insurance companies in addition to premiums. We held that such deposits became "absolute funds of the company" when the by-laws explicitly so provided, but not otherwise. Compare *Long Pond Mut. Fire Ins. Co.* v. *Houghton*, 6 Gray 77, 83 (1857), with *Fayette Mut. Fire Ins. Co.* v. *Fuller*, 8 Allen 27, 33 (1864). United asserts further that it is explicitly authorized by G. L. c. 171, § 35, to become insured by Federal instead of State insurance, and that the imposition of a forfeiture by MCUSIC for doing so is inconsistent with the legislative policy.

These arguments are persuasive against forfeiture, and we do not understand MCUSIC to contend that there is a forfeiture. But even if United retains some interest in the unexpended balance of § 7 assessments paid by it, it is not shown how much of a refund should be made, nor when it should be made. The legislative precedents suggest that several rational solutions to these questions are possible, and that it may be proper to give considerable discretion to the directors of MCUSIC.

The case was heard and decided on the footing that United claimed a right to an immediate refund of the total of its § 7 assessments. It now argues that it is entitled to the "unexpended portion," but the record before us provides no basis for determining that portion. We have considered remand of the case to make an equitable apportionment, but we prefer to take the broader ground that the problem is legislative rather than judicial. The governing legislation simply fails to provide a basis for fashioning the governing rule. Nothing we say here is to be taken as limiting the power of the Legislature to provide such a rule, or as indicating the appropriate solution, in the absence of further legislation, of the various hypothetical problems that have been put in argument: the withdrawn member who rejoins, merger or consolidation of two credit unions, dissolution of a member, dissolution of MCUSIC.

*Judgment affirmed.*